HIRAM BURNHAM v. THE WABASH WESTERN RAILWAY COMPANY.

*Railroad companies—Injury to passenger—Dangerous premises.*

The duty of a railroad company to its passengers does not cease the moment they alight from its trains, by its invitation, at a place selected by the company, but continues until the passengers have had a reasonable opportunity to leave the company's premises in the direction ordinarily taken, which way of egress it is the duty of the company to make reasonably safe for the passengers.

Error to Wayne. (Hosmer, J.) Argued January 21, 1892. Decided May 13, 1892.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor*, for appellant.

*Alfred Russell*, for defendant, contended:

1. Plaintiff was bound to inform himself as to whether the train would stop at Milan, and to decide for himself whether he would alight at the crossing, and the company could not do business on any other basis; citing *Mitchell v. Railway Co.*, 51 Mich. 236, 239; *Railway Co. v. Bangs*, 47 Id. 470.

McGRATH, J. Plaintiff, who lived at Milan, bought a

---

[1] Act No. 479, § 40, Laws of 1871.

ticket to Peru, Ind., and return. The ticket read, "Good on any train." At Peru plaintiff boarded the train to return. After the train had made 40 or 50 miles, the conductor came to plaintiff, and—

"I passed him out my ticket, and he made the remark that 'this train don't stop at Milan.' I made no answer. He took my ticket. He says, 'You will have to take your chances,' and I made no reply to it. He put a ticket in my hat for Milan, and I went on. Just below Britton, coming east, about 6 miles from Milan, he [the conductor] says: 'You will have to get off at the coal chute. We shan't make any other stop.' I said nothing. * * * Mr: Gauntlett [of Milan] got on at Adrian. The train hauled up and stopped [at the coal chute], and Mr. Gauntlett was getting off, and passed along, and I got off. Of course the coal along by the chute made it bad walking. It was 10 or 11 o'clock, and very dark. I couldn't see anything. Went by feeling more than any other way. I tried to walk out, found there was some level ground where there was better walking, but there were timbers along there at the coal chute, and I stepped over to get across them, and as I did so I fell. I could not get up. I did not know what ailed me. I was not used to having my leg broke, or anything of that kind; but I stumbled, and I called the man Gauntlett back, and I says: 'I think I must have broken my leg. I can't get up.' He came back to me, and he says: 'I think you broke your knee-pan. Stay here, and I will go down to the station and get a light and some help, and come down here.'"

About 500 feet west of the station at Milan, and north of the tracks, an elevated coal shed, 50 feet long, supported by trestlework, is situate. A long trestle carries a track into this shed from the west, and on the northerly side of the shed. The coal is shoveled into chutes, from which it is dumped, as needed by passing trains. The uprights which support this shed rest upon wooden sills, which run parallel with the railway tracks, and are laid upon posts. At each end of the shed there

is a sill running north and south. The size of these sills is not given, but they lie above the surface of the ground. These sills are within a few feet of the tracks,. —just a step, as one witness puts it. South of the coal sheds are three tracks. The train that plaintiff alighted from occupied the northerly track, near the coal shed,. and plaintiff alighted some distance west of the coal shed, where there is abundant room between the tracks and the trestle which carries the coal track into the shed. Plaintiff and Gauntlett, the latter leading, started east, and when they reached the coal shed they went under the southerly part of the shed. Gauntlett passed through safely, but plaintiff fell over the cross sill at the east end of the coal shed.

The testimony was conflicting upon the point as to whether this train did not frequently stop at the station platform. Plaintiff testifies that he had known it to stop at the platform frequently. There seems to be little doubt but that this train frequently and habitually took passengers for Milan, and landed them at this point. Two of the witnesses were hotel men, who were there that night, looking for passengers from this train. The conductor took up plaintiff's ticket for Milan, and put a Milan check in his hat. The conductor told plaintiff that the latter would have to take his chances. What chances? The chances of the train stopping at all at Milan? Plaintiff had not at that time learned of the probable stop at the coal chute. When the conductor, at the point within six miles of Milan, informed plaintiff that the train would not stop at the station, and that he would have to get off at the coal chute, the company, and not the passenger, selected the place where the latter should alight. The company invited him to alight there,. and, in view of that invitation, he was justified in assuming that it was a safe place, and that there was a:

reasonably safe exit from the place where he was landed. Trains occupied the tracks, and he naturally avoided that way out. From the point where he landed the way taken was the natural and only way on that side of the tracks to reach the station without walking upon the tracks. It cannot be said that plaintiff was negligent in getting off on the north side of the train, instead of the south side. He explains that there was a train upon the other track. The conductor knew that plaintiff and another passenger were to get off at that point, and no instruction or warning was given.

Defendant's counsel discusses the question of proximate cause. The declaration here counts not only upon the failure of defendant to carry plaintiff to Milan, but also upon the failure to provide a safe landing place at, and a safe place of egress from, the point where landed. Plaintiff, when injured, was upon the company's premises, and was necessarily there. He was left in a pocket, and on his way out received the injury. Plaintiff's theory is that defendant habitually accepts fare to Milan on this train; that the main streets of the village lead from the depot; that passengers from Milan are landed at this point; and that it is the duty of the company to provide at this point a safe and convenient, and, in the night-time, a properly lighted, platform, landing, or place at which plaintiff could safely and conveniently alight from the train, and from which platform, landing, or place, upon alighting, plaintiff might have safe and convenient egress. The duty of the defendant did not cease the moment plaintiff alighted from the train, nor until plaintiff had a reasonable opportunity to get away from the company's premises in the direction ordinarily taken. Until that point was reached and passed, any dangerous obstruction causing the injury was proximate under the declaration.

The judgment is reversed, and a new trial ordered, with costs of this Court to plaintiff.

MORSE, C. J., LONG, and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.