# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE PENNSYLVANIA COAL COMPANY

*v.*

LRA 334

JOHN KELLY.

*Filed at Ottawa April 1, 1895.*

| | |
|---|---|
| 156 | 9 |
| 160 | 328 |
| 160 | 888 |
| 156 | 9 |
| 164 | 61 |
| 63a | 395 |
| 64a | 406 |
| 156 | 9 |
| 170 | 524 |
| 156 | 9 |
| 75a | 351 |
| 156 | 9 |
| 182 | 190 |
| 156 | 9 |
| 202 | ²466 |
| 104a | ²426 |

1. APPEALS AND ERRORS—*a correct judgment will not be reversed for error.* A judgment which is correct on the merits will not be reversed because the case was erroneously tried out of its order, or because the court erred in refusing or giving instructions.

2. SAME—*objections to special findings must be made in trial court.* An objection that special findings are unsupported by evidence cannot be first made on appeal.

3. SAME—*effect of failure to object to instructions in Appellate Court.* Failure to point out objections to instructions in the Appellate Court is ground for refusal of the Supreme Court to consider such objections.

4. TRIAL—*what sufficient cause for trying cause out of order.* The fact that a re-trial of a cause became necessary, may be "good and sufficient cause," within the meaning of the statute, for trying it out of its order on the docket, by directing a second trial before the cases following it on the docket are disposed of.

5. MASTER AND SERVANT—*servant not bound to inspect machinery.* An employee shoveling coal into buckets which are elevated by machinery to be emptied, is not bound to make a personal inspection of a bucket before using it, to see if there is any defect in a fastening for automatically dumping it.

6. EVIDENCE—*permitting experiment with model in jury's presence.*
Permitting an experiment, in the presence of the jury, with a correct model of a coal bucket, by defects in which an employee was alleged to have been injured, for the purpose of showing how the bucket operated when in use, which the court says is permitted simply as an illustration of how the accident could have happened, is not erroneous, when no prejudice could have resulted therefrom.

*Pennsylvania Coal Co. v. Kelly,* 54 Ill. App. 622, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. McCONNELL, Judge, presiding.

DAVID FALES, for appellant:

The circuit court erred in not striking the cause from the trial calendar and continuing or passing the cause. The statute (chap. 110, sec. 17,) provides : "All causes shall be tried or otherwise disposed of in the order they are placed on the docket, unless the court, for good and sufficient cause, shall otherwise direct." See *Anderson* v. *McCormick,* 129 Ill. 313.

It may fairly be presumed that an employee knows the condition of materials, machinery or appliances, where he has a constant opportunity to inspect the same and which his regular duties bring under his notice. Shearman & Redfield on Negligence, 209, 216, 217; *Railroad Co.* v. *Marker,* 41 Ark. 542; *Railway Co.* v. *Eddy,* 72 Ill. 138 ; *Railroad Co.* v. *Jackson,* 55 id. 492 ; *Railroad Co.* v. *Clark,* 11 Ill. App. 104; *Duffy* v. *Upton,* 113 Mass. 544; *Perrigo* v. *Railroad Co.* 52 Iowa, 276 ; *Mayes* v. *Railroad Co.* 63 id. 562; *Heath* v. *Coal and Mining Co.* 65 id. 740 ; *Mony* v. *Coal Co.* 55 id. 673 ; *Railroad Co.* v. *Bragonier,* 119 Ill. 59.

BEACH & BEACH, for appellee :

So far as the statute or rules of court provide, there appears to be nothing to prevent the court, upon the disagreement of a jury or the granting of a new trial, from immediately proceeding to impanel a new jury to re-try the case. *Smith* v. *Bank,* 79 Ill. 118 ; *Anderson* v. *McCor-*

*mick,* 129 id. 313; *Clark* v. *Marfield,* 77 id. 258; *Gardner* v. *Baker,* 79 id. 448; *Anthony* v. *Bank,* 93 id. 225; *Reiman* v. *Ater,* 88 id. 299; *Crosby* v. *Kiest,* 36 Ill. App. 425.

It is the duty of the master primarily to furnish safe machinery and appliances for the use of the servant, and the servant has the right to assume that the master has performed that duty, and is under no obligation, in the absence of notice of danger, to investigate, and test the safety or fitness of the machinery furnished him by the master.   *Railroad Co.* v. *Hines,* 132 Ill. 161; Shearman & Redfield on Negligence, (2d ed.) secs. 95, 217; Bishop on Non-contract Law, sec. 678; *Porter* v. *Railroad Co.* 60 Mo. 16.

The danger of the position was not explained, as was necessary for the protection of one who had no knowledge of it.   *O'Connor* v. *Adams,* 120 Mass. 427; *Railway Co.* v. *Valirius,* 56 Ind. 511.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

Appellee was engaged in the service of appellant, unloading coal from the hold of a steamer at a dock in the city of Chicago.  He worked below, his duty being to shovel the coal into large buckets or tubs, which, when filled, were elevated by machinery to a boom over the hatchway of the vessel, and then carried along the boom to a hopper, into which they were emptied.  The buckets used were called the "Hunt tub."  Each had a capacity of about one ton.  They were hung on iron bails, to which the hoisting ropes were fastened.  By an appliance attached to the upper part of these bails, and fastening to the outer surface of the tub near the top with a latch, they were held in an upright position while being filled, and carried to the hopper.  When they reached that place a certain part of the appliance struck a stationary roller, unlatching the fastening and automatically dumping the coal into the hopper.  As soon as the

tub was emptied it swung back to its upright position and was re-latched. There is no controversy between the parties as to the fact that when the dumping attachment was in good repair there was no danger to those below from the tubs being emptied while being elevated. One of them, having been filled and hoisted above the hatchway, suddenly turned over and threw its contents back into the hold, upon appellee, breaking one of his legs and otherwise seriously injuring him. To recover damages for those injuries he brought this suit in the circuit court of Cook county, alleging in his declaration the failure of the defendant to provide him a safe and suitable bucket with which to perform the labor required of him, the alleged defect being that "a certain clasp or fastening for automatically dumping or emptying the bucket was worn, out of order and defective, of which the defendant had notice, and by reason of which plaintiff was injured." A second count charged that the injury resulted from the incompetency of the engineer in charge of the engine by which the coal was hoisted, but no proof was offered under that count. That the evidence tended to support the allegations of the first count is not denied.

Two trials were had in the circuit court, each resulting in a verdict for the plaintiff, the first being set aside and a new trial granted. After the first trial, the plaintiff, by leave of the court, amended his declaration. The court, in the meantime, proceeded with the regular call of the trial calendar, but after a number of cases had been tried, and before the call was completed, at the request of counsel for plaintiff the case was again put on the trial calendar. The defendant thereupon moved to strike it off and to pass or continue it, which motion was overruled and an exception taken. This motion was renewed when the case was called for trial, and again overruled.

On the last trial the jury returned a verdict for the plaintiff, fixing his damages at $5000. At the request

of the defendant it also returned the following special findings :

"*First*—Was the plaintiff negligent in working under the bucket while the bucket was being lifted above him? —No.

"*Second*—Did the defendant have actual notice that the bucket which caused the accident was defective?—Yes.

"*Third*—Did the plaintiff have notice that the bucket which caused the accident was defective?—No.

"*Fourth*—Did the plaintiff make any examination of the bucket that caused the accident, before using the same?—No.

"*Fifth*—Did plaintiff examine the latch on bucket before the time of accident?—No.

"*Sixth*—Was the bucket defective when the plaintiff worked with same, on the day before the accident?—Yes.

"*Seventh*—Was the work of the plaintiff specially dangerous?—No.

"*Eighth*—Was the plaintiff in the exercise of ordinary care and diligence at the time of accident?—Yes.

"*Ninth*—Was the plaintiff in the exercise of more than ordinary care and diligence at the time of the accident? —No.

"*Tenth*—Was the plaintiff wholly free from negligence in what caused the injury?—Yes.

"*Eleventh*—When the plaintiff went to work with bucket that caused the accident, was there anything in its condition to give notice to him of any defect in same?—No.

"*Twelfth*—Could the plaintiff, by examination, find defect in bucket that caused the accident?—No.

"*Thirteenth*—Did the plaintiff have equal means with the defendant of knowing about any defect in the latch on the bucket that caused the accident?—No.

"*Fourteenth*—Did the plaintiff have better means than the defendant of knowing about any defect in the latch on the bucket that caused the accident?—No.

"*Fifteenth*—Was the plaintiff familiar with the use of the bucket that caused the accident?—Yes.

"*Sixteenth*—Was the plaintiff familiar with the use of the latch on the bucket that caused the accident?—Yes."

After denying defendant's motion for a new trial the court entered judgment on the verdict. This is an appeal from a judgment of the Appellate Court affirming that judgment.

A reversal is urged for four alleged errors committed by the trial court: First, in placing the case on the trial calendar for a second trial, and not passing or continuing it; second, refusing the fourth, and eighth to fourteenth, inclusive, of the instructions asked on behalf of defendant; third, giving plaintiff's third instruction; fourth, allowing a model of coal bucket, with pan of coal, to be shown to the jury.

If it should be admitted that each of the first three errors was committed, as claimed, appellant could scarcely insist, in the face of the special findings made at its instance, upon a reversal of the judgment against it because of those errors. By these special findings the jury have found the defendant had actual notice that the bucket which caused the accident was defective, and that plaintiff had not; that plaintiff was not only in the exercise of ordinary care and diligence at the time of the accident, but that he was "wholly free from negligence in what caused the injury." (See special findings 11, 12, 13.) It will not be seriously contended that upon these facts the jury could have properly made any other general verdict than that which they returned. That being true, no error in the trial court which did not tend to produce those findings can be made the ground of reversal here, and therefore whether the case was erroneously tried out of its order, or the court erred in refusing and giving instructions, is immaterial. "Courts of review reverse only for such errors as may have been prejudicial to the complaining party, and certainly no error. or number of

errors can, with any propriety, be said to prejudice a party, when it is clear * * * that the jugment, upon the conceded facts, is the only one that could properly be rendered, and that another trial would therefore necessarily result the same way." (*Heckle* v. *Grewe*, 125 Ill. 58; *Avery* v. *Moore*, 133 id. 74.) Many other decisions of this and other courts could be cited to the same effect.

The case is, however, urged on behalf of appellant as though it was not bound by the special findings, and it is said some of them are wholly unsupported by the evidence. No objection of that kind was taken before the trial court, by motion for new trial or otherwise, and therefore it cannot be urged now. (*Avery* v. *Moore, supra; City of Aurora* v. *Rockabrand*, 149 Ill. 399.) Certainly the defendant regarded those facts as being in controversy upon the trial, else it would not have asked the jury to pass upon them.

But none of the errors complained of are well assigned, in any view of the case. There was no error in trying the case out of its order. The statute provides : "All causes shall be tried or otherwise disposed of in the order they are placed on the docket, unless the court, for good and sufficient cause, shall otherwise direct." (Rev. Stat. sec. 17, chap. 110.) The fact that a re-trial became necessary might certainly be "good and sufficient cause" for the court to direct the second trial to be had before the cases following it on the docket were disposed of. "The statute does not attempt to determine what shall constitute sufficient cause for trying or otherwise disposing of a suit out of its order on the docket, but that matter is left to the sound discretion and judgment of the court in which the suit is pending. Unless, then, it is clearly shown that the court has abused its discretion in trying a suit out of its order, its action will not be interfered with." (*Morrison* v. *Hedenberg*, 138 Ill. 22.) No reason whatever was shown by defendant for placing the case at the foot of the docket or continuing it. It was not

pretended that it could not have as full and fair a trial at the time the case was called as at any future time, nor is it now claimed that any injury whatever resulted to defendant by compelling it to go to trial at that time. But, without reference to these last considerations, we entertain no doubt that the court had a clear right, under the statute, to call the case for trial when it did.

The eighth, ninth, tenth, eleventh, twelfth and thirteenth of defendant's refused instructions imposed upon the plaintiff the duty of inspecting the bucket—examining it for the purpose of determining whether it was safe—failing in which he could not recover. The twelfth fairly states the theory upon which they all proceed. It is as follows:

"If the jury believe, from the evidence, that the plaintiff had constant opportunity to inspect any defect in the latch of the bucket that caused the accident, for some time before the accident, and continued to work with such bucket, then he is chargeable with notice of the condition of said latch, and if the accident was caused by such defect in said bucket he cannot recover, and their verdict must be for the defendant."

It was the unquestioned duty of the defendant to furnish plaintiff a safe bucket, and he had a right to assume that it had performed that duty, and was not bound to make a personal inspection of the same before using it. (Shearman & Redfield on Negligence, sec. 217; *Chicago and Eastern Illinois Railroad Co.* v. *Hines*, 132 Ill. 161.) The instructions do not present a case of patent defects in machinery, nor submit to the jury the question of ordinary care on the part of the plaintiff to discover defects. It is the duty of an employee to take notice of that which is obvious, and to use his senses with reasonable care and diligence to discover imperfections or defects in the place where or machinery and implements with which his employer has required him to work, and if he fails to do so he cannot recover for injuries resulting therefrom.

But these instructions make the plaintiff's right of recovery depend upon the question whether he made an *inspection* of the coal buckets, to ascertain whether they were in repair or not, before using them, without reference to the question as to whether it was his duty, in the exercise of due care, to do so or not. The practical result of holding these instructions to correctly lay down the law would be to shift the responsibility of seeing that machinery and appliances furnished an employee are in good repair and reasonably safe, from the master to the employee himself. But however construed, the instructions are clearly erroneous in attempting to submit to the jury a question of law, viz., whether it was the duty of plaintiff to "examine the buckets of the defendant before he used the same." If the servant must, at his peril, examine for himself, what becomes of the primary duty of the master to see that safe and suitable machinery and implements are furnished his employee?

It is clear from the abstract filed in the Appellate Court, and the manner in which the third of plaintiff's instructions is presented here, that no objection was urged to it in the Appellate Court, and we might for that reason properly refuse to consider the point made upon it here. (*North Chicago Street Railroad Co.* v. *Wrixon*, 150 Ill. 532.) The instruction attempts to lay down the old doctrine of comparative negligence, which is no longer in force in this State, and for that reason should have been refused. But under the special findings of the jury it is clear that it worked no injury to the defendant. (See special findings 8, 10.) *Chicago, Burlington and Quincy Railroad Co.* v. *Dickson*, 63 Ill. 151.

A small bucket, which plaintiff testified was a correct model of the "Hunt tub," was offered in evidence in connection with his testimony, and, with small pieces of coal and a pan, experimented with, in the presence of the jury, for the purpose of showing how the bucket operated when in use. Defendant objected, and the objec-

tion was overruled, the court stating: "The jury will have to remember, all the time, that a bucket that was actually used and the material that was actually used would be different from the bucket and material here in court; but I will permit it to go in, simply as an illustration of how the accident could have happened." It is insisted that the ruling of the court was erroneous, and that the experiments with the model prejudiced the jury against the defendant. We do not think the evidence tended to throw much light upon the real matter in controversy between the parties, but our attention has been called to no rule of evidence which was violated by its admission, nor can we see how the defendant could.have been prejudiced by it, especially as the purpose of admitting it was so definitely explained to the jury by the court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*