BESSIE HIATT, by Her Next Friend, v. THE DES MOINES, NORTHERN & WESTERN RAILWAY COMPANY, Appellant.

**Practice:** INSTRUCTIONS. Where several acts of negligence are charged against a carrier and the evidence tends to show but one of them, the jury should be explicitly told that recovery was limited to the one ground.

**Negligence:** LIGHTING PLATFORM. A railroad is required to use ordinary and reasonable care in so lighting its depot platforms that persons going to and from trains may use it with reasonable safety. The rule that in providing conveyance for passengers the utmost care and diligence must be furnished, does not apply.

*Appeal from Greene District Court.*—HON. GEORGE W. PAINE, Judge.

WEDNESDAY, OCTOBER 23, 1895.

Action at law to recover damages for a personal injury. Trial by jury. Verdict and judgment for the plaintiff. Defendant appeals.—*Reversed.*

*Cummins & Wright* for appellant.

*Cardell & Nichols* for appellee.

Rothrock, J.—I. The plaintiff was injured by falling between a moving train and a depot platform on defendant's railroad. At the time of the injury she

was about five years old. The injury was received
at a station named Waukee. The plaintiff and her
father and mother and two younger children were
passengers on a train which arrived at Waukee a lit-
tle after 7 o'clock in the evening of February 18, 1893.
The family were seated in the front part of the pas-
senger coach in which they were traveling. When
the train approached the station, and before it came
to a stop, the father and mother of the plaintiff made
preparations to leave the car, by vacating their seats.
The conductor of the train preceded the family in
going out of the car. The father of the plaintiff fol-
lowed him, carrying one of the children and a satchel.
The mother followed with the youngest child in her
arms, and holding the hand of the plaintiff. The
father went down on the depot platform, and when
the mother came to the steps, or on the platform of
the car, the conductor, who was then standing on the
depot platform, with his lantern, for the purpose of
assisting the passengers on and off the train, lifted
the plaintiff from the car, and placed her on the depot
platform. The plaintiff, instead of going towards the
depot building, went the other way, and about the
time the train started she fell between the depot plat-
form and the car, and the wheels at the rear end of
the car run over and cut off four of her toes. The
original petition in the case was filed on the second
day of September, 1893. The negligence therein
charged was as follows: "That on said day the plaint-
iff went on board of one of the cars of the defendant's
passenger trains with her parents, as a passenger
thereon, and that upon the arrival of said train at the
station of Waukee, and while she was still a passen-
ger upon said train, and was, with her parents, pro-
ceeding to alight from said train upon the platform
of said station, which station, depot, and platform the
defendant had negligently, wrongfully, and carelessly

failed and neglected to light in any manner, and before she had time to alight and reach a place of safety upon said platform, and while she was proceeding with due care and caution, the employes of the defendant operating and running said passenger train, which passenger train the defendant had failed and neglected to properly furnish with a sufficient number of competent employes to properly manage the same and the engine attached thereto, wrongfully and negligently started said train, and wrongfully, negligently, and unskillfully started said train and car from which plaintiff was proceeding to alight upon the platform of said station, with a sudden and violent jerk, and with such rapidity as to throw the plaintiff off her feet and on the ground off the platform on the rail of said track, with one foot upon the rails in such a manner that the wheels of the cars of said passenger train run over her said foot." Afterwards the petition was amended by averring, in substance, that the conductor assumed the sole charge of the plaintiff in alighting from the car, and that he put her in an unsafe and dangerous place, and did not place her in charge of her parents, and abandoned plaintiff in said unsafe position, and negligently and without giving plaintiff time to get to her parents, or to a place of safety, suddenly gave the engineer a signal to start the train, and caused the train to be suddenly and violently started, and with such rapidity as to throw the plaintiff off her feet, and on to the ground, between the platform and the train. Afterwards the plaintiff again amended the petition at great length. We are unable to determine the object of this second amendment. It is in the main a repetition of the original petition and the first amendment, with the addition that on account of the confusion caused by the failure to light the platform the plaintiff was bewildered, and fell to the ground, and was injured.

After the trial was commenced the plaintiff again amended her petition by striking from the petition and the amendments thereto the allegations charging the defendant with negligence in failing to have a sufficient and competent number of employes in charge of said train. The answer denied all of the negligent acts charged. The court undertook to state the issues to the jury, and did so by setting out all of the substance of the original petition and the amendments, and the stating of the issues constitute a large part of the charge to the jury. It is insisted on behalf of appellant that the court erred in stating the issues. We do not think the position is well taken. If the plaintiff had filed a substituted petition stating the acts of negligence of which complaint was made in a plain and concise manner, without repetition, the charge of the court to the jury, so far as the statement of the issues was concerned, might have been much abbreviated, and could have been properly understood by the jury. In a subsequent part of the charge the court correctly stated the negligence of defendant as follows: "The negligence set up by plaintiff as having been committed by the defendant is as follows: (1) That defendant's train was started suddenly, and without exercise of proper care; (2) that the conductor of defendant's train carelessly abandoned plaintiff in an unsafe and dangerous place, and started the train while plaintiff was in such unsafe place; (3) that defendant failed to properly light its depot platform. If the jury find from the evidence that the defendant was not negligent in any of the above-named particulars, then your verdict must be for the defendant." The court further instructed the jury as follows: "Railroads are public carriers, and the utmost care is required of them for the safety of passengers upon their trains. And a passenger is entitled to a reason-

able time to leave the car in which he has been riding when a train is stopped for that purpose. It is the duty of the defendant to have its platform reasonably sufficient and safe in all respects, and such lights as are necessary to render the use of the platform and the passage over it to and from the cars reasonably safe, should be upon the platform during the time the train remains at the station. A railroad company, in the conduct and management of its trains, is required to employ skillful and competent agents, and to use such means and foresight in providing for the safety of passengers as persons of the greatest care and prudence usually exercise in similar cases; and, should an injury result to a passenger from failure to use such a degree of care and prudence, the company will be responsible for such injury, unless it appears that the passenger so injured, by use of ordinary care and prudence, could have avoided the injury, provided the passenger is of sufficient age and discretion to use such care."

It will be observed that the part of the charge above set out is, to say the least, misleading. The rule as to the care required in the transportation of passengers by a common carrier is that the carrier is bound to use the utmost care and diligence in providing for the safety of the passengers by the use of sufficient and suitable modes of conveyance, so as to prevent injuries which human care and foresight can guard against. The rule is familiar, and we need not cite authorities in its support. After stating this rule in substance, the court then directed the jury that it was the duty of the defendant to have a reasonably safe and sufficient depot platform, and such lights as are necessary to render the use of the platform and the passage over it to and from the cars reasonably safe. Then, in the next paragraph, the jury

are directed generally that the greatest care and fore-
sight was required of the defendant in providing for
the safety of passengers. It is assumed all through
the charge that the child was a passenger, even after
it was placed on the platform; and this is not ques-
tioned by the defendant. There can be no doubt that
after the plaintiff was placed on the platform the
relation of a passenger had not ceased. If, in cross-
ing the depot platform, it had been injured by some
defect therein, or if it had been injured by falling
over some obstruction which it could not see by rea-
son of the darkness, the defendant would have
been liable for the injury, but the measure of
liability would not be determined by holding
the defendant to the utmost care and diligence of
which human foresight is capable. It is true that the
court, in one part of the instruction above set out,
used the word "reasonable" in connection with the
lighting of the platform, but in the same connection
the rule as to the utmost care is applied generally to
the whole case. The jury should have been plainly
directed that the defendant was bound to use ordi-
nary and reasonable care to light its platform, so that
persons using the same in going from or to the trains
might do so with reasonable safety. This appears to
be the rule adopted by the weight of authority. In
the matter of approaches to cars, such as platforms,
halls, stairways, and the like, a railroad is not bound
to use the utmost care to prevent accidents, but only
ordinary care, in view of the dangers to be appre-
hended. *Kelly v. Railway Co.*, 112 N. Y. 443 (20 N. E.
Rep. 383). In *Lafflin v. Railroad Co.*, 106 N. Y. 136
(12 N. E. Rep. 599), it is said: "The company was
not bound so to construct its platform as to make acci-
dents to passengers using the same impossible, or to
use the highest degree of diligence to make it safe,

convenient, and useful. It was bound simply to exercise ordinary care in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it was devoted." See, also *McKone v. Railroad Co.*, 51 Mich. 601 (17 N. W. Rep. 74) *Buenamann v. Railway Co.*, 32 Minn. 390 (20 N. W. Rep. 379); *Railway Co. v. Cantrell*, 37 Ark. 519. And see 2 Rapalje & Mack, Dig. Ry. Cas. tit. "Carriage of Passengers."

II. It appears from the evidence that a large lamp was usually placed in a bay window in the office of the station house. There was a conflict in the evidence upon the question whether the lamp was in position and lighted on the evening of the accident. In view of the fact that this was the only act of negligence which, under the evidence, would authorize a recovery, we think the jury should have been plainly and explicitly instructed upon the liability of the defendant for failure to have the lamp burning. The evidence does not show that there was any negligence in stopping and starting the train. The judgment of the district court is *reversed*.