[No. 9468. Department Two. September 7, 1911.]

M. C. HARRIS et al., Respondents, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, Appellant.[1]

CARRIERS—SETTING DOWN PASSENGERS—UNLIGHTED PLATFORM. It is negligence for a street car company to maintain for the use and convenience of passengers, raised platforms in a street, without guard rails or lights necessary to enable passengers to leave the same with safety.

CARRIERS—PASSENGERS—ON PLATFORM—CONTINUANCE OF RELATION. Where a street car company maintains raised platforms in a street for the use and convenience of passengers leaving cars, the relation of carrier and passenger exists until the passenger has an opportunity to leave the platform in safety.

SAME—PLATFORMS AS STATIONS—INSTRUCTIONS. Where a street car company maintains platforms in an ungraded street which required passengers on out-bound cars to use both platforms and a connecting walk in order to reach the street, the jury is properly instructed on the theory that the platforms and walk were maintained as a station, although it maintained no depot or waiting room.

SAME—TRIAL—INSTRUCTIONS—HARMLESS ERROR. In an action for injuries to a passenger alighting upon a defective platform, an instruction that a carrier owes the highest degree of care consistent with the operation of its business is not prejudicial, when immediately followed by an instruction that it owed the duty to keep its platforms in a reasonably safe condition.

SAME—PASSENGERS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. In an action for injuries sustained by a passenger alighting in the dark upon a platform without guard rails, it is not error to refuse to instruct as to the plaintiff's duty if she had knowledge that the platform was raised, where the jury was properly instructed as to her contributory negligence, and she had alighted at the place only twice, one and two years before.

[1]Reported in 117 Pac. 601.

EVIDENCE—DEMONSTRATIVE EVIDENCE—MODELS. Wooden models, fairly representing the place of an accident, are admissible, within the discretion of the court, to illustrate the conditions, although not drawn to a scale.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—MATERIALITY. A new trial for newly discovered evidence as to the kind of glasses worn by the plaintiff on a dark night is properly denied, since it probably would not, and certainly should not, have changed the verdict.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $2,750, reduced by the trial judge to $2,250 is not excessive, where the plaintiff sustained a broken ankle, suffered severe pain, was helpless several weeks, and on crutches for nine months, and the ankle will probably always be weak and painful.

Appeal from a judgment of the superior court for King county, Main, J., entered November 10, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained by a passenger in falling from an unguarded platform. Affirmed.

*Will H. Thompson* and *Morris B. Sachs*, for appellant.

*Roney & Loveless*, for respondents.

ELLIS, J.—Action against the appellant for damages for personal injuries to respondent Rosa B. Harris, occasioned by her stepping, in the nighttime, from an unguarded and unlighted platform, maintained by appellant as a station or place to receive and discharge passengers.

The appellant, at the time of the accident, owned and operated a line of electrical railway between Seattle and Renton in King county, and for some distance upon Rainier avenue in the city of Seattle. Angeline street runs easterly and westerly and connects with Rainier avenue, which runs northerly and southerly. Angeline street terminates at the easterly line of Rainier avenue. On the westerly side of Rainier avenue opposite Angeline street the appellant's line was double tracked. On the west side of Rainier avenue opposite the end of Angeline street is a hill or bluff, with steps to mount it. Appellant's tracks at this point were laid in the

rock and gravel, and between the tracks was a ditch.   The west part of Rainier avenue and the part occupied by the appellant's tracks was in an unfinished condition, not graded or improved for the use of teams or traffic of any kind.   Appellant's tracks are a little higher than the easterly or graded portion of the avenue.

The appellant maintained and used two board platforms or landing places for taking on and discharging passengers at the point opposite the end of Angeline street on the avenue, one on the westerly side of its westerly track and the other on the easterly side of its easterly track.   They were almost opposite to each other, and were connected by a plank walk laid on the ties of the tracks and across the intervening space. This walk was three and one-half or four feet wide, and furnished the only convenient means of passing from one platform to the other across the appellant's tracks.   The platforms were each about four feet wide and thirty-two feet long, and with the connecting walk were the only convenient means of reaching the graded portion of the street by passengers.   These platforms had been maintained for fourteen or fifteen years, and were constructed before the graded part of the avenue was planked.   The westerly platform was only a few inches higher than the track, but the easterly platform was several inches higher, and some sixteen or eighteen inches above the graded portion of the avenue.   There were steps at each end descending to the street.   There was no railing or guard of any kind on either platform.   The westerly track was used for outbound cars and the easterly for inbound cars. There was no connection between either of these platforms and the sidewalks on Rainier avenue or Angeline street.   The evidence shows that these platforms were maintained by the appellant for the use and convenience of its passengers, and that it would have been difficult to board or alight from the cars on the easterly track without the aid of the platform. The appellant's roadbed does not reach the level of the street for a distance of one block to the south and several

blocks to the north of the platforms. There is no street crossing on the avenue at Angeline street.

Mrs. Harris was a passenger on one of the appellant's outbound cars on August 24, 1909, at about nine o'clock in the evening, her destination being the point on Rainier avenue opposite Angeline street. She alighted upon the westerly platform, and after the car had passed on, she crossed over the tracks upon the connecting board walk to the easterly platform, intending to proceed across Rainier avenue in a southeasterly direction to the sidewalk on Angeline street, and thence on that street to her home. On reaching the east platform, she took a few steps away from the track and stepped off in the darkness, falling and spraining her ankle badly, and fracturing the ends of the ankle bones, so that she has ever since been lame, and claims that her injuries are permanent. It was very dark at the time, and she claims she fell because she could not see and did not know that the platform was above the street; that she had received no warning from any one, and there was no railing or guard of any kind to warn her or prevent her from stepping off in the darkness. There was no light of any kind maintained by the appellant upon or near either platform. The nearest city light was a block away and did not light the platform. The negligence charged is that the appellant failed to provide any means of lighting the platforms, and failed to have any guide rails or balustrade on the east platform to warn or protect its passengers landed there in the dark. The jury assessed the damages at $2,750, which the court reduced to $2,250, and judgment was entered accordingly.

It seems to be conceded that, at the time the platforms were built, the ground upon which they stand was owned by the predecessors of the appellant as a part of the right of way. Prior to the accident, this right of way was deeded by the appellant to the city of Seattle, and was at that time owned by the city as a part of Rainier avenue. The appellant contends that, inasmuch as the place where the accident occurred was

in a public street, the duty to light was not upon the appellant, but upon the city. The refusal of the court to so instruct is assigned as error. The duty to keep the platforms safe for the use of its passengers was upon the appellant, regardless of any neglect on the part of the city. The failure of the city to light the street at that point was one of the known conditions of the place. The fact that the appellant was permitted by the city to maintain its platforms in the street did not absolve it from the duty to protect its passengers discharged there from injury on account of the darkness or defects in the platforms. While there was no obligation upon the appellant to light the street as such, for the protection of the respondent, it was under the legal obligation to light its platforms for a reasonable time within which to allow her to leave them in safety. The platforms being without guide rail or guard, the failure to light them was negligence. *Wallace v. Wilmington & N. R. Co.*, 8 Houston (Del.) 529, 18 Atl. 818; *Louisville, N. A. & C. R. Co. v. Lucas*, 119 Ind. 583, 21 N. E. 968, 6 L. R. A. 193; *Chicago, R. I. & P. R. Co. v. Wood*, 104 Fed. 663; *Hiatt v. Des Moines N. & W. R. Co.*, 96 Iowa 169, 64 N. W. 766; *Galveston, H. & S. A. R. Co. v. Thornsberry* (Tex.), 17 S. W. 521.

But the appellant contends that the relation of carrier and passenger had ceased to exist at the time the accident happened. It is assigned as error that the court refused to so instruct the jury. It is true that carriers by street car discharging passengers upon a public street are not responsible for defects in the street. But that rule has no application to the facts here presented. The respondent was not discharged upon the street, but upon the platform. The platforms, though technically in the street, as were the tracks, were no part of the thoroughfare, but were maintained and used in aid of appellant's business as a carrier. There is no difference, either in reason or in law, between such a situation and that of a railroad company maintaining a depot or station. The authorities are practically uniform that the

relation of carrier and passenger continues with corresponding duties and liabilities, for such reasonable time after the passenger has alighted from the carrier's vehicle at his destination as to enable him to leave the carrier's premises by the route usual and proper. 5 Am. & Eng. Ency. Law (2d ed.), p. 449; *Chicago, R. I. & P. R. Co. v. Wood, supra; Brunswick & W. R. Co. v. Moore,* 101 Ga. 684, 28 S. E. 1000; *Chicago & Alton R. Co. v. Tracey,* 109 Ill. App. 563; *Louisville & N. R. Co. v. Keller,* 104 Ky. 768, 47 S. W. 1072; *Texas & P. R. Co. v. Dick* (Tex. Civ. App.), 63 S. W. 895; *Alabama, G. S. R. Co. v. Coggins,* 88 Fed. 455; *Gaynor v. Old Colony & Newport R. Co.,* 100 Mass. 208, 97 Am. Dec. 96; *Burnham v. Wabash West. R. Co.,* 91 Mich. 523, 52 N. W. 14; *Ormond v. Hayes,* 60 Tex. 180. Even if it be conceded that the appellant was under no obligation to furnish the platform, yet having done so and arranged the two platforms in such a manner as to invite passengers to pass over them on leaving the cars, it was incumbent upon it to keep them safe for the purpose. *Keefe v. Boston & A. R. Co.,* 142 Mass. 251, 7 N. E. 874.

Counsel complains that the court instructed the jury upon the theory that the two platforms and the connecting walk were maintained by the appellant as a station. We think this theory was the correct one under the evidence. It is true the appellant maintained no depot or waiting room at this point. It did, however, maintain these platforms and the connecting walk, and the evidence is clear that the passengers on outbound cars for Angeline street, though alighting on the west platform must use both platforms to reach the street, and were expected to do so. They were both necessarily used by passengers from Angeline street, whether taking cars or leaving them. They were in no just sense independent structures, as argued by the appellant.

It is also contended that the court erred in instructing the jury that it is the duty of a common carrier of passengers for hire to exercise the highest degree of care consistent with

the reasonable and practical operation of its business, in view of the method and means of conveyance employed. This instruction was, however, followed immediately by another, in which the jury was told that the duty as applied to landing places and platforms was to keep them "in a reasonably safe condition for the purposes intended;" and this was repeated in still another instruction. While the instruction complained of would be too broad under some of the authorities, if standing alone, we do not believe that it was prejudicial to the appellant, in view of the other instructions as applied to the facts presented. In any view of the case the instruction was proper as applicable to the evidence that the respondent was discharged from the car in the darkness without warning as to the dangers of the place.

The appellant claims that the court erred in refusing to instruct the jury that if Mrs. Harris "had knowledge, or could have had knowledge by the exercise of ordinary care or by having gotten off or on the planking previous to the time of the accident, of the difference in elevation of the planking and the street," and stepped off without making allowance for such difference, causing the injury, then she could not recover. We think the instruction was properly refused. The court instructed the jury fully and faultlessly on the question of contributory negligence, which was all the appellant could ask. The evidence showed that Mrs. Harris had never taken a car at this point, and had gotten off there only twice, one time two years before the accident, and the other one year before, and both times in the daylight. There was no evidence that she had ever seen the place at any other time. There was no error in the refusal to make this evidence the basis of a specific instruction, since it was amply covered by the instruction given. Other instructions are complained of, but they all relate to the matters which we have disposed of, and require no further comment.

At the beginning of the trial, a wooden model was intro-

duced to illustrate the position of the tracks and platforms. This is assigned as error. It was identified by several witnesses as a fair representation of the place at the time of the accident, though not drawn to scale. It was admitted by one of the appellant's witnesses to be a fair representation of the conditions there in a collective way. The court, in admitting the model, said: "I think it may be admitted for the purpose of illustrating the testimony of the witnesses. There is no testimony that it was drawn to scale; but simply for the purpose of illustrating the testimony I think it may go in." There was no error in this ruling. It is a common practice to use models, maps, and diagrams to illustrate evidence, and their accuracy when controverted is for the jury. Their admission is largely within the discretion of the trial court. *Western Gas Const. Co. v. Danner*, 97 Fed. 882; *Clegg v. Metropolitan St. R. Co.*, 1 App. Div. 207, 37 N. Y. Supp. 130; *American Express Co. v. Spellman*, 90 Ill. 455; *McMahon v. Dubuque*, 107 Iowa 62, 77 N. W. 517, 70 Am. St. 143; *Pennsylvania Coal Co. v. Kelly*, 156 Ill. 9, 40 N. E. 938.

A motion for new trial was interposed, mainly on the ground of newly discovered evidence. The evidence relied upon was the discovery of the fact that Mrs. Harris, at the time of the accident, wore bifocal glasses. At the trial she testified that she was then wearing the same glasses that she wore when injured. No effort was then made to discover their quality or construction. In any event, the character of the glasses was immaterial, since the evidence showed that the place of the accident was at the time in almost total darkness. Such evidence probably would not, and certainly should not, have changed the verdict. Its discovery was not ground for a new trial. 29 Cyc. 900, 901; *Leschi v. Territory*, 1 Wash. Ter. 13.

Lastly, it is claimed that the judgment is excessive. The verdict was for $2,750. On the hearing of the motion for a new trial the court reduced it to $2,250. The evidence showed that Mrs. Harris suffered intense pain; that she was helpless

for several weeks; that she went on crutches for almost nine months; that at the time of the trial—October 12, 1910—the ankle was yet badly swollen, very painful, and interfered with her work as a dressmaker; that her earning capacity was reduced by one-half; that there is a limitation in the movement of the ankle, probably permanent, and that the ankle will probably always be weak and painful. The trial court saw the injured limb, heard the testimony of physicians, and considered the judgment for the reduced amount reasonable. We should be extremely reluctant to further reduce it. There is no claim that the court was inspired by passion or prejudice. 13 Cyc. 126, 130, 132; *Whelan v. Washington Lumber Co.*, 41 Wash. 153, 83 Pac. 98, 111 Am. St. 1006; *Ogle v. Jones*, 16 Wash. 319, 47 Pac. 747; *Smith v. Spokane*, 16 Wash. 403, 47 Pac. 888; *Uren v. Golden Tunnel Min. Co.*, 24 Wash. 261, 64 Pac. 174; *Jordan v. Seattle*, 30 Wash. 298, 70 Pac. 743.

The judgment is affirmed.

DUNBAR, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.