[No. 10249.   Department Two.   September 4, 1912.]

# L. L. Valentine et al., Appellants, v. Northern Pacific Railway Company et al., Respondents.[1]

Carriers—Injuries to Passengers—Sleeping Cars—Evidence—Nonsuit. In an action by a passenger against a railroad company and a sleeping car company for injuries sustained on a sleeping car through the negligent construction of a door and want of lights on the car, a nonsuit as to the sleeping car company is proper, where it was not alleged or shown that it sold the ticket or owned or operated the car.

Same—Degree of Care—Sleeping Cars. The duty of a railroad company to exercise the highest degree of care for passengers compatible with practical operation, applies to sleeping cars connected with the train, regardless of any private contract or arrangement it may have with the sleeping car company.

Same—Cars and Appliances—Negligence—Evidence. A spring sufficiently strong to close a toilet room door on a Pullman sleeper being a necessary safeguard, in view of the swaying and lurching of the train, evidence that the spring was stronger than found on other cars, is not sufficient to establish negligence or make a case for the jury.

Same—Negligence—Res Ipsa Loquitur. The doctrine of res ipsa loquitur does not apply to the case of an injury to a passenger by reason of the automatic closing of a spring door, when it was not shown that the door did not close when it ought not to have closed or that the spring did not perform its function.

Same—Negligence—Lighting Car—Question for Jury. In an action by a passenger for injuries sustained when her hand was caught by the closing of a spring door to the toilet room in a sleeping car, whether it was reasonably necessary to light the passageway or toilet room is a question for the jury, where it was a reasonable inference from the testimony that the accident would not have happened if lights had been provided.

Same—Contributory Negligence—Question for Jury. In such case, the contributory negligence of the plaintiff in failing to call for lights is for the jury, where she testified that as soon as she discovered that the toilet room was in darkness she started back to call for light and was injured.

[1]Reported in 126 Pac. 99.

SAME—NEGLIGENCE—OPERATION—SUDDEN LURCH—EVIDENCE—SUFFICIENCY. The lurching of a passenger train does not show negligence, where there was no evidence that the lurch was so violent as not to be accounted for except upon the theory of a defective roadbed or improper management; the doctrine of *res ipsa loquitur* not applying.

Appeal from a judgment of the superior court for King county, Myers, J., entered February 17, 1912, upon granting a nonsuit, in an action for personal injuries sustained by a passenger on a railway train. Reversed.

*Roney & Loveless*, for appellants.

*C. H. Winders*, for respondent Northern Pacific Railway Company.

*Chas. F. Munday*, for respondent Pullman Company.

ELLIS, J.—This appeal is from a judgment of nonsuit in an action to recover damages for personal injuries to the plaintiff Annie L. Valentine, which injuries it is charged were caused by the negligence of the defendants.

The plaintiffs, husband and wife, on April 4, 1911, at about eleven o'clock p. m., took passage upon a train of the defendant railway company at Portland, Oregon, for Tacoma, Washington. They had purchased a sleeper ticket entitling them to berth No. 11 on the Pullman sleeper which formed a part of the train. This berth was the last one on the right-hand side of the car as one entered it from the rear. In the rear end of the car was the women's toilet room and lavatory, and the latter connected with the former by a door. Between this toilet room and the body of the car was a compartment or state room. At this room the main aisle of the car turned to one side and passed out to the rear end of the car. This side passageway was about 14 feet in length and about 2 feet wide. The toilet room door opened inwardly from this passage, at a point about 7 or 8 feet from where it turned toward the middle of the car. There was no light in this side passage when the plaintiffs entered the car

at eleven o'clock, nor when the accident happened. When they entered the car, and throughout the night, there was a dim light at each end of the main aisle between the berths. There was no light in the toilet room. Mrs. Valentine testified that both the passageway and the toilet room were in total darkness. At about one o'clock Mrs. Valentine, having occasion to seek the toilet room, went down this side passage, opened the toilet room door in the darkness, pushed aside a portier or curtain hanging across the toilet room just within the door, and found the toilet room also in darkness. She stepped back, intending to call the porter to light up, when the car lurched, threw her against the outer wall of the passageway and back again toward the door. She threw her right hand up to steady herself, and at that instant the door of the toilet room automatically closed, catching her little finger in the hinge side of the door, crushing it. Blood poisoning supervened, necessitating the amputation of the little finger at the second joint, and causing her whole right hand to become permanently stiff and maimed.

The amended complaint, upon which plaintiffs went to trial, alleged as a basis of liability that the defendants negligently maintained the door with a spring for closing it, so strong as to render the use of the door dangerous, and negligently kept the passage in darkness. At the close of their evidence, the plaintiffs were permitted to further amend the complaint so as to more definitely state the negligence relied upon, and to conform to their evidence. The amendment was as follows:

"Because of the door negligently constructed with a very strong spring behind it, as aforesaid, and because of the negligence of the defendants, and their servants in not warning the plaintiff, Mrs. Anna L. Valentine, of said construction as aforesaid, and because she could not see where to place her hand in a safe place on account of the aisle, passageway and dressing room negligently kept in total darkness by the

defendants as aforesaid, the plaintiff Mrs. Anna L. Valentine was injured in the manner hereinafter mentioned."

The only allegation tending to implicate the Pullman· Company was the following:

"That on or about the 4th day of April, 1911, and now the defendants were and are the owners of and operate a certain railroad commonly known as the Northern Pacific Railway, together with the tracks, cars, locomotives, rolling stock and other appurtenances thereunto belonging, and were and now are common carriers of passengers for hire between the places hereinafter mentioned, among others."

This was denied by the answer of the Pullman Company, and no evidence was offered tending to show ownership, management, or dominion of the Pullman Company, further than incidental reference to the sleeping car as a Pullman car. While it was alleged and proven that the plaintiffs "purchased a sleeper ticket for lower berth No. 11, car No. 12 of said train," there was neither allegation nor proof that the ticket was purchased from the Pullman Company, or any agent or representative of that company. The nonsuit as to the respondent Pullman Company was properly granted.

As to the respondent Northern Pacific Railway Company, the case presents a different aspect. It operated the train as a common carrier. As such it was incumbent upon it to exercise the highest degree of care, prudence and foresight for the safety of its passengers, compatible with the practical performance of the duty of transportation. It would be liable for the slightest negligence with reference to the exercise of such care. This is law so familiar, and has been announced so often in various forms of expression, as to require little citation of authority. *Jordan v. Seattle, Renton & Southern R. Co.,* 47 Wash. 503, 92 Pac. 284; *Mueller v. Washington Water Power Co.,* 56 Wash. 556, 106 Pac. 476; 6 Cyc. pp. 591, 592, 593.

"This caution and vigilance must necessarily be extended to all agencies or means employed by the carrier in the trans-

portation of passengers." *Northern Pac. R. Co. v. Hess,* 2 Wash. 383, 26 Pac. 866.

The duty to exercise this highest degree of care was primarily that of the railway company. It could not avoid liability for negligence in that regard by any private contract or arrangement with the Pullman Company. *Herrman v. Great Northern R. Co.,* 27 Wash. 472, 68 Pac. 82, 57 L. R. A. 390. If there was any evidence tending to show, and from which an inference might reasonably be drawn, that the proximate cause of the injury was either an improper or dangerous spring on the door or the failure to light the passageway or toilet room, then the question of the liability of the railway company should have been submitted to the jury.

A careful consideration of the evidence leads us to the conclusion that the case, so far as dependent upon the first charge of negligence, was properly taken from the jury. It is a matter of common knowledge that when a swiftly moving train passes over even a well constructed roadbed there will be much swaying and lurching of the cars from side to side, especially in rounding curves. Common prudence would dictate that a door such as the one here in question should be provided with a spring or some other device having sufficient propulsive force to close and latch the door and prevent it when unlatched from swinging with every lurch of the car. It seems too plain for speculation that any spring which would meet that purpose would cause the door to close with sufficient force to crush a finger inserted between the door strip and the hinge side of the door as was the finger of the appellant. The evidence shows that on the doors of all cars examined by the appellants some such spring was used. True, both of the appellants testified that, by examinations of other cars at times more or less remote from the time of the accident, they found no spring so strong as the one on the door here in question. That was the sum of the evidence as to any defect in the door or spring. In view of the neces-

sity and purpose of the spring, that evidence was not sufficient to raise an inference of negligence.

The doctrine of *res ipsa loquitur* has no application to the case here presented. There was no evidence that the door closed when it should not have closed or that the spring did not perform the function for which it was intended. *Weinschenk v. New York, N. H. & H. R. Co.*, 190 Mass. 250, 76 N. E. 662.

The second charge of negligence we think presented a question for the jury. The toilet was provided for the accommodation of the passengers. There was a tacit invitation to the appellant to use it. Mrs. Valentine testified that the passage leading to the toilet was in total darkness, as was the toilet room itself; that as she afterwards discovered, there was a light in the lavatory opening into the toilet room, but the connecting door was closed so that it furnished no light to that room. She further testified that, if the passageway had been lighted, she could have seen where she was placing her hand when she sought to steady herself, and would not have been injured. The respondent contends that this was a mere conclusion, which is in a sense true. But the conclusion seems so obvious that we think it might reasonably have been drawn by the jury. As opposed to this, the respondent argues that it is more probable that she threw out her hand involuntarily, and that the injury would have resulted even had the place been lighted. This also is a mere conclusion. The evidence presents a striking instance of a situation upon which the minds of reasonable men may differ. In such a case, the question of negligence is always one for the jury.

It is well established that it is a duty of common carriers to keep their stations and platforms so lighted as to enable passengers to avoid danger in boarding and leaving trains. As to passengers, the failure to provide such light is negligence, though some authorities hold that the degree of care incumbent upon carriers as to their stations and platforms is

only ordinary care.  *Chicago, R. I. & P. R. Co. v. Wood*,
104 Fed. 663; *Hiatt v. Des Moines, N. & W. R. Co.*, 96 Iowa
169, 64 N. W. 766; *Wallace v. Wilmington & N. R. Co.*, 8
Houst. (Del.) 529, 18 Atl. 818; *Louisville, N. A. & C. R. Co.
v. Lucas*, 119 Ind. 583, 21 N. E. 968, 6 L. R. A. 193;
*Galveston, H. & S. A. R. Co. v. Thornsberry* (Tex.), 17 S. W.
521; *Jordan v. New York N. H. & H. R. Co.*, 165 Mass.
346, 43 N. E. 111, 52 Am. St. 522, 32 L. R. A. 101; *Harris
v. Seattle, Renton & S. R. Co.*, 65 Wash. 27, 117 Pac. 601.

It would seem that for a much stronger reason should it
be held a duty of the carrier to keep its cars so lighted as to
enable passengers to avoid danger, since as to these the au-
thorities are practically unanimous that the carrier is charged
with the highest degree of care compatible with reasonable
operation.    When it may be reasonably assumed that the
necessities of the passengers might require lights, the failure
to furnish them is negligence.    *Western Maryland R. Co.
v. Stanley*, 61 Md. 266, 48 Am. Rep. 96.

On the motion for nonsuit the appellants were entitled to
have their evidence taken as true, and all that it reasonably
tended to prove taken as established.    They were entitled to
every favorable inference reasonably deducible from their
evidence.    *Young v. Aloha Lumber Co.*, 63 Wash. 600, 116
Pac. 4, and cases there cited.    Whether a light in the passage-
way was reasonably necessary, and whether, under all the
facts and circumstances and all the justifiable inferences to
be drawn therefrom, Mrs. Valentine would not have been
injured but for the lack of light, were questions for the
jury.

It cannot be said, as a matter of law, that Mrs. Valentine
was guilty of contributory negligence.    The toilet room had
been provided for her use.    She was tacitly invited to enter
it.    She was where she had the right to be and was doing
what she had the right to do.    It is argued that she should
have called the porter and asked for a light as soon as she
discovered that the passageway was dark.    Her testimony

was that, as soon as she discovered that the toilet room was in darkness, she started back to call for light. Whether in attempting to enter the toilet room in the darkness she did not act as an ordinarily prudent person would have acted under the same circumstances was a question for the jury. *Jordan v. New York, N. H. & H. R. Co., supra; St. Louis, I. M. & S. R. Co. v. Battle,* 69 Ark. 369, 63 S. W. 805; *West v. Thomas,* 97 Ala. 622, 11 South. 768.

The appellants in their briefs advance as a third ground for recovery that the lurching of the car showed negligence in the operation of the train or in the maintenance of the road-bed. The complaint was amended in its allegations of negligence after the evidence was in. It contains no charge of negligent operation or that the roadbed was faulty or defective. Moreover, there was no evidence to sustain either charge. Mrs. Valentine testified that the car gave a violent lurch, but there was no evidence that the lurch was so violent as not to be accounted for except upon the theory that the roadbed was defective or that the train was improperly operated. It might have resulted from rounding a curve or passing a switch. Here, again, the rule *res ipsa loquitur* has no application. That rule can only be invoked where the accident, in the light of ordinary experience, is not capable of explanation except as resulting from negligence. *De Yoe v. Seattle Elec. Co.,* 53 Wash. 588, 102 Pac. 446, 104 Pac. 647, 1133; 2 White, Personal Injuries on Railroads, § 667.

The judgment is reversed, and the cause is remanded for a new trial as to respondent Northern Pacific Railway Company.

FULLERTON, MOUNT, MORRIS, and CROW, JJ., concur.