ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. BATTLE.

Opinion delivered June 8, 1901.

CARRIER—UNLIGHTED PLATFORM—NEGLIGENCE.—At the intersection of the Searcy and the Iron Mountain railroads the former road built a platform as an approach to its trains, which was reached from its cars by a gang plank and from the ground by an incline.   The platform was about 35 feet from the Iron Mountain depot, and was built without the latter road's permission, though it was used by passengers in transferring from one road to the other.   Plaintiff

arrived in a coach over the Searcy road in the night time, intending to transfer to the other road. As there was a light and fire in the Searcy coach, plaintiff, by permission of the conductor, remained there, it being cold and dark outside. When plaintiff first arrived, there was a light on the platform, but it was extinguished before he left. On hearing an approaching train, plaintiff walked out, and, in attempting to descend the incline, fell and was injured. *Held*, that plaintiff was not guilty of contributory negligence in not leaving the coach while the platform was lighted.

*Held*, also, that the Searcy railroad was negligent in not keeping its platform lighted.

*Held*, further, that the Iron Mountain railroad was not liable as a joint tort-feasor.

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

STATEMENT BY THE COURT.

The Searcy & West Point Railroad, which we will designate as the "Searcy Road," intersects at right angles with the Iron Mountain Railroad at a station on the Iron Mountain called Kensett. The Iron Mountain road was built first. Within the angle of the intersection of the two roads a platform was erected by the Searcy road, on the right of way of both roads. It stood about six feet west from the track of the Iron Mountain, and about three feet north of the track of the Searcy road. It was three and one-half or four feet high, twelve feet wide and thirty-seven feet long. It stood about on a level with the platform of the cars of the Searcy road, and was reached from said cars by a gang plank. It was about thirty-five feet from the station house of the Iron Mountain road. The cinder platform or ground between the elevated platform and the station house was reached from the elevated platform by an incline about sixteen feet long and six and one-half feet wide. This incline was at the east end of the elevated platform, and situated diagonally across from the east end of the Searcy coach. It was in evidence that the elevated platform was built by the Searcy road for its own use and convenience. The Searcy road did not have affirmative permission of the Iron Mountain to erect the platform, but it was built without objection from the Iron Mountain. The Iron Mountain knew the platform was there. Sometime before the accident it had given directions to the Searcy road to have the platform removed. The same was

not removed, however, until sometime after the accident. The reason given by the officers of the Iron Mountain for wanting the platform removed was because of its unsightliness. Passengers on the Iron Mountain road who were intending to go to Searcy over the Searcy road without break in their journey had to reach the coach of the Searcy road by way of the elevated platform and the incline thereto. Likewise, passengers on the Searcy road who intended to take the Iron Mountain train at Kensett, on continuous journey, passed over this platform and the incline thereto to the cinder platform and the station house of the Iron Mountain. It was the only route for such passengers,—at least the natural and usual route. The Searcy road's cars were drawn by a mule. The road ran from Searcy to Kensett.

On the night of January 21, 1898, appellee, a citizen of Little Rock, being at Searcy, took the Searcy road for Kensett, intending to go thence, without break in his journey, to Little Rock over the Iron Mountain road. The Searcy train left Searcy at about the usual hour (10:45 p. m.), and arrived at Kensett at about 11:40 p. m. The Iron Mountain train which Battle expected to take was due at Kensett at 12:03 a. m., but was somewhat belated. Appellee and other passengers, after arriving at Kensett, remained some fifteen or twenty minutes on the Searcy coach, when, hearing the sound of an approaching engine, and supposing it to be the train desired, they passed out of the Searcy coach at the east end, onto the elevated platform; and appellee, in attempting to reach the incline and descend to the cinder platform or ground, fell and was severely injured. He sued the appellants, alleging that his injuries were caused by the negligent construction and use, and permitting the maintenance and use, of a dangerous platform and approaches thereto, and by the failure to keep the platform and approaches thereto lighted at night for the safety and convenience of persons arriving and departing on the respective trains of appellants.

The separate answer of appellants denied the negligence charged, and set up the contributory negligence of appellee. Other facts will be stated in the opinion.

*Dodge & Johnson,* for appellant, St. Louis, etc., Ry. Co.

Appellee was guilty of negligence, such as bars recovery. 149 Pa. St. 65; Ray, Neg. Imp. Duties, 387. Only ordinary care in lighting its platforms is required of a railroad company. 84 Ala.

159; 64 N. W. 766; 8 Houst. 529; 112 N. Y. 443; 107 N. Car. 576. A passenger not using the approach in the ordinary and usual way, and while same was safely lighted, cannot hold the carrier to extra vigilance to guard against accidents occasioned by his voluntary delay. 106 N. Y. 136; 51 Mich. 601; 32 Minn. 390; 4 Elliott, Railroads, § 1590. There was no joint liability, and no judgment should have been had against the Iron Mountain company. 119 Ind. 583; 13 Ill. App. 437; 31 *ib.* 596; 110 Ill. 294; 2 Hilliard, Torts, 248; 26 Pa. St. 482. If there is any liability, it rests upon the first carrier, the appellee not having been discharged, as its passenger, when the accident happened. 36 N. W. App. 669; 23 S. W. 737; 142 Mass. 251; 154 Pa. St. 364; 15 N. Y. Supp. 579; 22 S. W. 242; 30 S. W. 592; 100 Mass. 208.

Further, as to rules governing joint liability of railroads, see: Hutch. Carr. § 515; 58 Am. & Eng. R. Cas. 594; 22 N. Y. 258; 58 Fed. 762; 3 Biss. 43.

*Grant Green, Jno. T. Hicks* and *R. A. Dowdy,* for appellant, Searcy & West Point Railroad Company.

The evidence fails to show any custom which would bind appellant to continue the lights on the platform until the arrival of the Iron Mountain train. 27 Am. & Eng. Enc. Law, 717; 62 Ark. 33. The conductor had no authority to permit appellee to remain in the car; and the objection to the evidence on that point should have been sustained. 27 S. W. 496; 97 Mich. 154; 96 Pa. St. 201; 78 Ind. 292; 4 Am. & Eng. R. Cas. 602; 48 Miss. 112; 1 Sh. & Redf. Neg. § 147; 55 Kan. 586. *Cf.* 40 Ark. 298; 53 Ark. 298; 58 Ark. 318; S. C. 24 S. W. 500; Mech. Ag. 706-710; 18 Wis. 185; 94 Mo. 255; 27 L. R. A. 161; Thomp. Neg. 459; 42 Kan. 465.

*J. W. House,* for appellee.

Railroad companies are required to keep in a reasonably safe condition all portions of their platform and approaches thereto to which passengers or those coming to take passage would naturally resort, and especially all such platforms and approaches as have been constructed and used, or permitted so to be, by the company. 37 Ark. 519; 46 Ark. 195; 48 Ark. 125; 65 Ark. 255; 26 Ia. 124; 2 Am. & Eng. R. Cas. 497; 13 *id.* 29; 18 *id.* 153; 27 *id.* 137; Ell. Railroads, § 1641; 35 Am. & Eng. R. Cas. 476. It is the duty of railroad companies to have their platforms and approaches

adequately lighted at night, and for failure to do so they are liable for injuries occasioned thereby. 49 Ark. 279; 18 Am. & Eng. R. Cas. 153; 34 La. Ann. 777; 8 Del. 529; Thomp. Carr. 108; Ray, Neg. Imp. Duties, Pass. 90, 91. The rule applies as well to persons coming to take passage as to persons departing. Hutch. Carr. § 516; Ray, Neg. Imp. Dut. 97; 36 Fed. 72; 48 Ark. 491. Appellee, having remained in the coach with the assent of the conductor, was guilty of no negligence in so doing. 86 Pa. St. 139; 37 Ark. 519; 47 Am. & Eng. R. Cas. 573; 25 Fed. 627; 66 N. Car. 499; Whart. Neg. § 371; Whitt. Smith, Neg. § 371. Appellants are joint tort-feasors and are jointly or severally liable. 16 Am. & Eng. Enc. Law, 471; 35 Pa. St. 128; 19 Am. St. Rep. 755; 129 Ill. 152; 105 Ill. 364; 45 N. Y. 628; 39 Minn. 328; 16 Am. St. Rep. 250; Patt. Ry. Acc. Law, § 224; Ray, Passenger Carr. 121; 122, 152; Hutch. Carr. 515 a; L. R. 6 Q. B. 73; 59 Me. 187; 99 Mass. 217; 53 Kan. 431; 152 Pa. St. 334; 56 Kan. 559; Bish. Non-Contr. Law, §1086; 19 C. B. (N. S.), 183; 34 La. Ann. 777; 40 N. E. 807; 35 Pa. St. 128; 110 Ill. 294, 301; 21 Cal. 381; 13 Ill. App. 439; 119 Ind. 590; 120 Ind. 205; 3 Biss. 45; 30 S. W. 278; 1 Sh. & Redf. Neg. § 345; 3 Allen, 405.

Wood, J., (after stating the facts). 1. Considering first the question of contributory negligence, the proof shows that Battle was not very familiar with the platform and its incline, having passed over it only once before. On the occasion in question, when the train whistled which they supposed to be the one desired, Battle put on his overcoat, gathered up his valise in his left hand, with umbrella in his right, and walked out of the car (first feeling with his umbrella for the gang plank) onto the platform, still using his umbrella as a guide to feel his way until he fell. There was not sufficient light to enable him to see the platform or the incline at the time he made his exit. But the proof tended to show that for ten minutes after the arrival of the Searcy train the platform was sufficiently lighted to have enabled Battle to pass out safely, and it is insisted that he was guilty of contributory negligence in not passing out during that time. The proof tended to show a custom for passengers who did not intend to buy tickets, and had no baggage to check, to remain on the Searcy coach until the arrival of the Iron Mountain train which they desired to take. Battle and the other passengers were invited by the driver and conductor of the mule car to remain on the Searcy coach, as there

was no night porter at the depot who kept up the fires. True, the driver of the mule car testified that he did not think he notified the passengers to remain on his coach, but he does not say that he did not do so. There is positive proof by other witnesses that he did invite them to remain, and the driver himself testified on this point as follows: "I remember Mr. Battle speaking to me, if I wanted them to get out, so I could go to sleep. I told them that I did not aim to go to sleep. That was just before I went into the depot." The Searcy road had no station house of its own. The only waiting place for its passengers was therefore its car. It was shown that it usually arrived at Kensett before the Iron Mountain train with which it made connection, perhaps as much as twenty minutes. We do not think the conductor, who had entire charge of the Searcy coach, and was the only representative of his company on the ground, and stood for it for all purposes, so far as the duty to passengers was concerned at Kensett, exceeded his apparent or real authority in inviting the passengers to remain on his coach until the arrival of the Iron Mountain train, which they were expecting to take.

Even in the absence of any custom or positive invitation to remain, the passengers were invited by the very surroundings to remain on the Searcy coach, if they so desired, until the arrival of the Iron Mountain train which they expected to take. It was cold and dark on the outside, the fires were not kept up in the station house of the Iron Mountain. The Searcy coach had a fire, and was comfortable. It expected to await the arrival of the Iron Mountain train. Only about fifteen or twenty minutes intervened. There was no rule of the company forbidding its passengers to remain while awaiting the arrival of the Iron Mountain train. In the absence of such rule, and with no other waiting room provided for its passengers by the Searcy road, we know of no rule of law that would force them from the only comfortable waiting place provided. The instructions of the court on all these points was therefore more favorable to the Searcy road than it had the right to expect. The verdict acquitting Battle of contributory negligence was amply sustained by the proof.

Was the Searcy road liable? It was its plain duty to exercise ordinary care to have its platform and the incline or approach thereto sufficiently lighted to enable its passengers and those intending to become its passengers to enter upon and depart from its

trains with reasonable safety. Fordyce v. Merrill, 49 Ark. 277; Thompson, Carr. Passengers, 108.

The light should be maintained a reasonable time before and after the arrival and departure of trains. A finding of negligence for failing to keep the platform lighted for fifteen or twenty minutes, under the circumstances of this case, cannot be considered unreasonable. The Searcy & West Point Railroad failed to discharge the duty which it owed to the appellee in this regard, and is therefore liable. We find no error in the charge of the court of which it can complain, and the judgment as to it is affirmed.

2.  The court, by a majority of its judges, has concluded that, under the facts as stated, the Iron Mountain is not liable, and that as to it the judgment must be reversed, and the cause remanded for new trial. From the decision and judgment holding the Iron Mountain not liable, and reversing and remanding the cause as to it, Justice RIDDICK and I dissent. We are of the opinion that the elevated platform and its incline is a necessary approach to the platform and station house of the Iron Mountain road at Kensett. This by reason of its necessary and usual, if not unavoidable, use by its passengers who intend to go to Searcy over the Searcy road in continuous journey, and likewise by passengers of the Searcy road who intend to become passengers of the Iron Mountain road. By reason of its contiguity to the platform and station house and the necessary use as indicated, it was an approach to the platform of the Iron Mountain road, as well as the Searcy road, and devolved upon the Iron Mountain the common duty with the Searcy road of exercising care to keep it reasonably safe for passengers, which duty could only have been discharged by lighting the platform for a reasonable time before and after the arrival and departure of its trains. It was immaterial that the platform was erected by another and without its affirmative permission. It was its right and duty to object to a dangerous agency being placed in such proximity to its platform and station house as to become a necessary approach to its trains by certain of its patrons, and its failure to object and to take steps to remove was tantamount to assent or concurrence, so far as the law is concerned, in fixing duties and liabilities.

The facts of this case in our opinion make the Iron Mountain a joint tort feasor with the Searcy road; and the principle of law applicable is correctly and concisely stated in 16 Am. & Eng. Enc. Law, 471, as follows: "Where a breach of duty is committed by

more than one person, each contributing to the injury as a joint tort-feasor, the plaintiff has his election to make either or all of them defendants. And it is not always essential, in order to make them liable as joint tort-feasors, that they should have acted in concert; acting independently and causing together a single injury, they are liable jointly and severally."

The judgment should be affirmed against both appellants.