THE WESTERN MARYLAND RAIL ROAD COMPANY *vs.*
WILFRED M. STANLEY.

*Action against a Railroad Company by a Passenger for Negli-
gence—Passing through a Tunnel—Negligence—Contributory
negligence.*

In an action against a railroad company by a passenger to recover for
injuries sustained, the plaintiff's evidence must be assumed to be
true, in considering the question whether there was sufficient legal
evidence to sustain a recovery.

In passing through a long tunnel lights are necessary, and the win-
dows, doors and ventilators should be closed. But it does not
follow that an officer should be provided for every car, or that the
omission to shut out the gas and smoke, would, of itself, give the
right to passengers to sue for the discomfort and annoyance.

A passenger sitting close to the front door of a crowded car, when
passing through a tunnel, attempted to shut the door while the car
was in total darkness, in order to keep out the smoke and cinders,
and in doing so was injured. In an action for damages brought
by him against the railroad company, it was HELD :

1st. That all the facts and circumstances taken together would war-
rant the finding of negligence on the part of the defendant, and
justify a verdict for the plaintiff, unless the plaintiff's conduct
amounted to contributory negligence.

2nd. That the Court below properly refused to instruct the jury that
the plaintiff was chargeable with contributory negligence.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.* At the trial the plaintiff offered the two
following prayers:

1. That if the jury believe, that at the time referred
to, the plaintiff had paid his fare, and was a passenger on

a train on the road of defendant, that it was then the duty of the defendant, so far as the management and movement of its train was concerned, to use all reasonable means in its power to avoid subjecting the plaintiff to discomfort and annoyance; and if they find, that at the time referred to, the door of the car in which plaintiff was seated, was open, and that large quantities of cinders and smoke from the engine of said train were coming through said door, and that plaintiff, and all others in said car, were suffering great discomfort and annoyance therefrom, and that no employé of the defendant was then and there present to shut said door, that then the plaintiff had a right to close the same, in a reasonable and prudent manner; and if they find, that he received the injuries testified to, while attempting to close said door, and that in so attempting to close the same, he acted with such care and prudence as men of ordinary care and prudence would exercise under similar circumstances, then he is entitled to recover, provided they find that said door was open, and said injuries happened by reason of the failure of the defendant to use reasonable and ordinary precautions and discipline in the management of its said train at that time.

2. That if the jury find for the plaintiff, then in estimating the damages to which he is entitled, the jury should consider the mental and physical suffering to which he was subjected, by reason of said injuries, the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of said injuries, and whether said injuries are, in their nature, permanent; and also such loss of business as they may find resulted directly from said injuries, as well as such expense as they find he may have incurred for surgical treatment therefor, and he is entitled to recover such damages as the jury may find would be a fair and reasonable compensation for such injuries and suffering.

And the defendant offered the two prayers following:

1. That there is no sufficient legal evidence in the cause of such negligence on the part of the defendant or its agents, as would entitle the plaintiff to recover, and the verdict of the jury must be for the defendant.

2. That upon the undisputed facts of the case, it is apparent that the plaintiff contributed to the happening of the injury complained of in the declaration by his own want of ordinary care, and therefore the plaintiff is not entitled to recover.

The Court, (STEWART, J.,) granted the prayers of the plaintiff, and refused those of the defendant. The defendant excepted, and, the verdict and judgment being against it, appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Thomas W. Hall*, for the appellant.

*Albert Ritchie*, for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellee sued the appellant in Baltimore City Court for injuries sustained whilst he was a passenger on appellant's road, by reason of the negligence of the appellant.

Two questions only are presented for determination. The appellant offered two prayers. First, that there was no legally sufficient evidence of negligence on the part of the appellant; and second, that upon the undisputed facts the appellee was guilty of contributory negligence which barred his recovery. The Court rejected these prayers, and granted the appellee's two prayers, the first of which recited the facts deemed necessary to be found by the jury, to find for the plaintiff, and the other laying down the

measure of damages in case they found for the plaintiff. No objection is made to the form of either of these prayers of the plaintiff, if the Court considers there was evidence legally sufficient to take the case to the jury.

There is some conflict in the testimony, in respect to some of the facts, on which the appellee bases his right to recover; but as it is a question of whether there was sufficient legal evidence to sustain recovery, if believed by the jury, it is only necessary to state the plaintiff's own testimony; for it must be assumed to be true, for the purposes of this decision. He states, that he took passage to the race grounds, at Pimlico, in a special train of the appellant, which was run from its principal station, Hillen Station, in the City of Baltimore, on the 20th of October, 1882; that he took the train, after buying his ticket, about noon; that the seat he occupied was a front seat in the car next to the aisle, on the left hand side of the aisle, the door opening toward that side; that he was near enough to the door to touch it, when opened, with his foot; that all the seats in the car were filled, and there were persons standing in the aisle and on the platform; that the train was very long and the whole of it was packed and crowded; that soon after the train started it entered the Baltimore and Potomac Railroad tunnel, when it became pitch dark in the car, there being no lights on the train; that the door of the car was open, allowing smoke and cinders to enter in great quantities, thereby incommoding the plaintiff and other persons in the car, who shouted "shut the door;" that the train passed the first section of the tunnel with the door open, (and witness thought it was open from the time it left Hillen Station,) and so passed into the second section of the tunnel, which was very long; that the smoke and cinders were coming from the engine in large quantities, and that witness was choking from them, and all had suffered very much; that it was still pitch dark in the car, and persons were calling out "shut the

door;" that the door was not shut, nor was there any em-
ployé of the company in the car to respond to the request;
that thereupon the plaintiff rose carefully from his seat,
for the purpose of shutting the door, extending both hands
before him carefully, and feeling in the darkness for the
door; that just then, there was a swaying of the door, and
it was thrown back against the plaintiff's right hand, and
his right arm passed through the glass of the upper part
of the door, cutting it very severely in many places, the
most severe being across the wrist; whether the swaying
of the door was caused by the motion of the car, or by
some person on the outside of the door, witness could not
tell; that this happened just after the passing an opening
in the tunnel, at which break the light was sufficient to
enable him to see the door was open, and that there were
persons standing in and about the doorway, some on the
inside and some on the outside; that nothing could be
done after the accident, because it was pitch dark, and
nobody knew what had occurred; that feeling himself
bleeding, he could only grasp his arm with his left hand
and try to stop the blood till the train got into the light,
when persons came to his assistance; that the train went
through the tunnel "very slowly; it fairly crept;" and it
was so heavy, some distance out of town it stopped, and
was divided because it was so heavy; that since the acci-
dent he has been deprived of the free use of his right hand,
besides suffering great pain, and being subjected to great
expense for medical attendance, &c.

It appeared in the proof of the defendant that the run-
ning time for the passage of the tunnel was from six to
seven minutes.   This is a sufficient summary of the evi-
dence for our purpose, and assuming its truth, we think
there was no error in refusing to take the case from the
jury because of the reasons stated in either of the prayers
of the defendant.

There can be no doubt, that it is the duty of railroads
for the conveyance of passengers to take proper precau-

tions, in the management, appointments, and discipline of their trains, to secure the safety and reasonable comfort of their passengers. The passenger pays his fare, and in consideration thereof the company engages to take him to his destination with due care for his appropriate comfort and safety consonant with the exigencies of that kind of travel. The company knew the train had to pass through the tunnels of the Baltimore and Potomac Railroad. Lights were necessary for such a totally dark transit. The necessities of passengers might require light during the passage of them. No argument is needed to prove this. The officers of the train, testifying for the defendant, say there were lights in all the cars; but this is a question of evidence, and the plaintiff and another passenger say there were none.

The imperative necessity for closing the windows, doors, and even the ventilators when passing through tunnels, to prevent the otherwise inevitable discomfort from the smoke, cinders and gas is notorious. The ordinary practice of the company to do that before entering a tunnel, as proved by the defendant's own witnesses, establishes the importance of such precaution. There were ten passenger coaches and but two conductors, and two brakemen on the train. When the cry was made, to "shut the door," there was no officer in the car to comply with the passengers' request, and the plaintiff was impelled by his discomfort to attempt to do it himself. Whilst we do not think or mean to say, that an officer should have been provided for every car, or that the omission to shut out the gas and smoke would of itself have given a right to passengers to sue for the discomfort and annoyance, yet we think all the recited facts and circumstances taken together, if found by a jury, would warrant the finding of negligence on the part of the defendant, and justify a verdict for the plaintiff, unless the plaintiff's conduct amounted to contributory negligence. This the Court was asked by the defendant to say, as a

matter of law, the plaintiff's action was, and barred recovery. We think the Court below committed no error in declining to so instruct the jury. The plaintiff was sitting nearest the door, and was, therefore, subjected naturally, to more discomfort than fellow-passengers in remoter parts of the car. He received its full force and volume, as it came rushing in, before it diffused itself over the car. It choked him. Self-preservation prompted him to shut it out. It cannot be, that a man, under such circumstances, feeling himself suffocating or choking from the smoke, cinders and gas, must sit supinely, and endure, without making any effort to relieve present and prevent further physical pain. Shutting the door was the only remedy, and if, in his effort to do that which the company should have done for him, but did not, he acted with prudence and care, he cannot be regarded as guilty, in law, of such contributory negligence as defeats his action. It is said it was imprudent because he knew there were persons about the door inside and out, and their presence there may have been the immediate cause of the accident. If that were so, it cannot affect the question; for there were no seats for those persons, and it was the duty of the company to have seen that the doorway was not so obstructed by the crowd as to keep it open and- inflict this discomfort on passengers, and prevent the doors being shut. The witness did not know he could not shut the door, or he would not have made the effort, we may fairly suppose; and his description of the manner in which he attempted to shut the door, indicates that it was with great care and caution; and the jury have so found; for that question was submitted to them at the plaintiff's own instance, in his first prayer. This is the plain and natural view of the case, and we have direct authority in support of it. In *Gee vs. Metropolitan Railway Co.*, *L. R.*, 8 *Q. B.*, 161, Chief Justice COCKBURN thus lays down the law: "If the inconvenience is so great, that it is reasonable to get rid of

Western Maryland R. R. Co. *vs.* Stanley.

it, by an act not obviously dangerous, and executed without carelessness, the person causing the inconvenience by his negligence would be liable for any injury that might result from an attempt to avoid such inconvenience." If the appellee acted without carelessness or negligence, it is clear he was not culpable. In *Mayor and C. C. of Baltimore vs. Holmes*, 39 *Md.*, 249, this Court said, negligence is "the want of such care, as men of ordinary prudence would use under similar circumstances." There was certainly evidence from which a jury might reasonably find he did act with such prudence and care as men of ordinary prudence under like circumstances would have acted; and that the appellant had not used reasonable caution in providing for the exigencies of that occasion, and was guilty of such negligence as warranted a verdict for the plaintiff. We have been cited by the counsel for appellant, to sec. 363 of *Wharton on Negligence*, where the case of *Adams vs. Lancashire and Yorkshire R'y Co.*, L. R., 4 C. P., 739, is cited as establishing in England, that a passenger cannot shut a door, when a conductor could be called on to do it, without incurring the charge of culpably contributory negligence if he should be injured in so doing. Assuming that case would be followed under exactly similar circumstances here, (which we do not find it necessary to determine in this case,) still the facts of this case take it out of the operation of the rule there laid down; for there was no conductor or other officer to shut it when called on, and the necessity was forced on the appellee to shut it, or endure such inconvenience and discomfort, as he ought not to be required to suffer without proper effort to secure relief. But the same section cites approvingly the case of *Gee vs. Metropolitan R'y Co.*, to which we have already referred, where recovery was allowed, in a case where a passenger rose up to enjoy a look out from the window, and pushing against a door, which was imperfectly and negligently fastened, it flew

open, and the passenger was injured. That case was not nearly so strong a case for the plaintiff as this is. We cannot see that there was any departure from well settled principles in the rulings of the Court below, or from the authority of any of the cases relied on at the hearing. Finding no error the judgment will be affirmed.

*Judgment affirmed.*

(Decided 7th February, 1884.)


STONE, J., filed the following dissenting opinion:

I think, in this case that the plaintiff was clearly guilty of contributory negligence, and was not entitled to recover, and that the Court should have so instructed the jury. In arriving at this conclusion, I assume, of course, the evidence on the part of the plaintiff to be true.

The only inconvenience suffered by the plaintiff, was from the smoke and cinders, which came into the cars, while passing through the tunnel. The time occupied by the train in passing through the tunnel was six or seven minutes. The tunnel itself is divided into three sections, with openings between, and at one of the openings there is a station. When in the tunnel, and when it was dark, (no lights in the cars,) the passenger left his seat with his hands extended before him in order to shut the door, and the door swaying, either from the motion of the cars, or from the act of another passenger, he ran his hand through the glass of the door, and cut it.

That his own act caused the injury to the plaintiff, must be clear. He was furnished by the company with the seat in their cars, for which he had duly paid, and would have been safely transferred to his destination, *if he had kept that seat.*

The only question, to my mind, then, is, whether the company gave him sufficient cause to leave his seat. If they did not they cannot be held liable.

The comfort and convenience of a passenger is a very undefined and undefinable matter. Some inconvenience or discomfort is almost inseparable from all travel. Too much or too little warmth, or too much sun, or draught, are all subjects of annoyance. But I do not understand, that in order to escape these, and kindred annoyances, a passenger is justified in assuming a work that properly belongs to the officers of the train. If he does, he does it at his own risk.

When, however, the discomfort, caused by the negligence of those in charge of the train, is so great as to endanger the life or health of the passenger, then, if he can do so without manifest risk, he is authorized to endeavor to remedy the evil.

That *some* smoke and cinders penetrate the cars in their passage through a tunnel, is as inevitable as that some air will find its entrance. That the life or health of a passenger can be really endangered by all the smoke or cinders that can enter, in the few minutes taken to pass through the tunnel, even if the door of the car be open, is an impossibility in the nature of things. It may be a great discomfort to the passenger, but it can be nothing more. While I assume the evidence of the plaintiff to be true, his language must be taken in its ordinary meaning, which is not always the literal one. When he says he "was choking," he can only mean that he was suffering great discomfort from the inhalation of the smoke, &c., and not that his respiration was about to be stopped. This discomfort could have lasted but a very few minutes, and could not have endangered his life or health.

In leaving, therefore, his seat, and attempting to perform the duty of a brakeman, he did so at his own risk, and, as a matter of law, I think there was no sufficient evidence to go to the jury to authorize a recovery.