## Louisville & Nashville Railroad Company v. Turner.

(Decided March 22, 1927.)

### Appeal from Breathitt Circuit Court.

1. Evidence.—It is matter of common knowledge that smoke and gases from coal burned in locomotive enter coaches of passenger trains to annoyance and discomfort of passengers, regardless of whether doors, windows, and ventilators are closed.

2. Evidence.—It is matter of common knowledge that persons who suffer from asthma, hay fever, and kindred ailments are affected by smoke and gases incident to travel by rail to much greater degree than those free from such diseases.

3. Carriers.—Negligence predicated on extraordinary duty owing by carriers and their servants to weak, aged and infirm who are passengers is never established unless notice of condition of passenger is brought home to carrier.

4. Carriers.—Evidence held insufficient to take case to jury in action against railroad by one subject to asthma, who suffered attack after inhaling smoke entering car through open door while train passed through tunnel, where railroad had no notice that she was subject to asthma, and plaintiff sat within few feet of door, but failed to close it or to request that it be closed.

WOODWARD, WARFIELD & HOBSON, HUNT, NORTHCUTT & BUSH and O. H. POLLARD for appellant.

ERVINE TURNER, JR., and G. C. ALLEN for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellee, Arminda Turner, recovered judgment for
$1,000.00 in the Breathitt circuit court against appellant,
Louisville and Nashville Railroad Company, in an action
by her against it for personal injury alleged to have re-
sulted from its negligence. Hence, the appeal.

Appellant insists that it was entitled to a peremptory
instruction at the close of the testimony, and that the trial
court erred in overruling its motion for same. These are
the facts: Appellee is 47 years of age. On December 11,
1923, she spent the day in Jackson, Kentucky, and left
that town after night on one of appellant's passenger
trains, having purchased a ticket to Wolf Coal, one of its
stations. She was seated in the first seat in the front
end of the ladies' coach and very near the door. Accord-
ing to the testimony for her the train stopped at Dumont
station, where several passengers left the coach and
where others entered it. Before reaching that station one
of the trainmen, as is customary, called it and then passed
out of the coach through the door immediately in front of
her leaving it open. After the passengers for that
station left the train and those boarding it there had done
so no member of the train crew returned to the coach in
which she was riding and the door was left open. There
is a tunnel only a very short distance from Dumont sta-
tion, as the train was proceeding, which from the evidence
is about 300 feet long. The train entered the tunnel while
the door was open and smoke entered the coach in which
appellee was riding. Her testimony as to how it affected
her is as follows:

"Q. When the train went in the tunnel what
happened? A. Smoke came in and smothered me up.
Q. What effect did it have on you? A. It took my
breath nearly, just smoked me to death kinder. Q.
Could you speak? A. No. Q. How long was it before
you were able to speak? A. Don't know how long
hardly it was."

Appellee testified further at considerable length as
to the suffering she endured by reason of inhaling smoke
on this occasion and the extent to which it has impaired
her health, claiming to have been totally disabled for
work for a considerable length of time and never there-
after to have been able to do more than two-thirds the

amount of work she formerly had been able to do. She admitted on cross-examination that she was familiar with the location of the tunnel and saw that the door was open immediately before the train entered it; that she saw no member of the train crew who could be asked to close it, and though she was in three or four feet of it that she did not attempt to close it herself or ask anyone else to do so. She also admitted that in her younger days she had had frequent and severe attacks of asthma, but claimed that she had not suffered with that disease for the last previous ten or eleven years. Her daughter and son-in-law, who were in the same coach with her on this occasion, testified for her and corroborated her as to the door having been left open when the train left Dumont and being open when it entered the tunnel, and they described the manner in which the smoke affected appellee much in the same way that she did.

When it was called to the attention of the conductor of the train that appellee had been affected by the smoke he arranged to have her taken back to Jackson that night on a special train which happened to be running, and she was transferred to it shortly after the train passed through the tunnel. She testified that she was treated that night by Dr. Arthur Bach at his office in Jackson, Kentucky, after which, aided by her daughter and son-in-law, she walked to the home of friends who lived some distance away and spent the night. She returned to her own home the following day. No doctor appears to have been called to her home to see her; but she testified that she made three subsequent trips to Dr. Bach for treatment. Her physician was not introduced as a witness for her, and no other witnesses save her daughter and son-in-law testified for her upon the trial hereof.

Several other persons who were passengers and who occupied the same coach as did appellee on the night in question testified for appellant herein, one of whom occupied the seat just opposite to her. He testified that the door of the coach blew open just as or just after the train entered the tunnel and that he started to get up to close it but, observing someone standing near it, called to him to close the door, which he did immediately. No other passenger in the coach appears to have suffered any ill-effects from the smoke. One lady who testified and who sat two or three seats behind appellee had two infant children with her on the occasion in question, one of them only two months of age. She stated that neither

she nor her children suffered any ill-effects from the smoke.

The physician who treated appellee was introduced for appellant and testified as to the condition she was in when she came to his office for treatment. He stated that her symptoms were typical of asthma and that in the course of the history of her case, given to him by appellee, she spoke of having suffered from asthma previously, though she attributed her then condition to the smoke she had inhaled. From the history of the case which the patient gave him and from his observation of her symptoms he diagnosed her case as asthma and gave her an electrical treatment for that disease, to which she readily responded. He then prepared some medicine for her and she left his office. He testified that he didn't recall that she ever called on him in person again, but that she sent someone to him for an additional supply of the medicine which he gave her that night.

Counsel for appellee have pointed us to no case where a passenger of a common carrier, affected by smoke entering the coach through an open door while its train in the usual course of operation was passing through a tunnel, has recovered damages upon the theory that the carrier was negligent in failing to keep the door closed. An exhaustive, independent search of our own has not disclosed one. They rely largely upon this court's opinion in L. & N. Railroad Company v. Roberts, 187 Ky. 192. In that case, however, the door of the coach in which Miss Roberts, the appellee, was riding was left open by the brakeman as he came into the coach just as the train entered the tunnel and, as the opinion recites, "the car was filled with cinders and a cinder went into her eye." From that injury a growth appeared in her eye requiring an operation for its removal. In holding the railroad company liable as being negligent, it was said:

> "It is a matter of common knowledge that if the door of a car without a vestibule is left open, cinders will probably enter the car. Hence, if the brakeman himself left the door open just as the train was about to enter the tunnel, and this caused the cinder to enter plaintiff's eye, it can not be doubted that he was guilty of negligence for which the company was liable. That being true a cause of action was both pleaded and proved."

The distinction between that case and this is at once apparent. In that case the cinder which got into appellee's eye came into the coach through the door which, according to the testimony, had been left open by the brakeman, who passed through it just as the train entered the tunnel. With the door closed the cinder could not have entered. It, however, is a matter of common knowledge that smoke and the gases from the coal burned in a locomotive enter the coaches of passenger trains to the annoyance and discomfort of passengers, regardless of the fact that the doors, windows and ventilators may be closed.

From the evidence herein reasonable men could not draw different conclusions as to the fact that appellee was affected by inhaling the smoke and gases as she appears to have been on this ocassion solely because she was subject to attacks of asthma. It is undoubtedly true that inhaling the smoke and gases emitted from the locomotive contributed toward bringing on this attack of the disease to which she was subject. While there is no direct evidence that more smoke and gases entered the coach during the time the door was open than would have entered before the train passed through the tunnel if the door had been closed, perhaps that fact might be inferred. The evidence of the physician discloses, and it is a matter of common knowledge, that persons who suffer from asthma, hay fever and kindred ailments are affected by the smoke and gases incident to travel by rail to a much greater degree than those who are free of those diseases. They are likewise so affected by a great many other common annoyances to which all of us are subjected, such as dust and other foreign elements in the atmosphere we breathe. The resorts of the north are filled each season with people so afflicted who have fled the pollen-laden atmosphere of the places of their abode. How much or how little of the foreign elements in the atmosphere will cause an attack of the disease to which appellee is subject we have no way of knowing. It strikes at times without any apparent cause. Appellee had crowded much activity into the hours of the day on which she was stricken. Arising early she prepared breakfast for herself and family. She then walked seven miles to the railroad station nearest her home and took passage on a train that landed her in Jackson at nine o'clock a. m. She spent the day there in and about the various mercantile

establishments of the town. She started on her return journey after nightfall.

When these facts are considered it readily becomes apparent that if it be conceded that inhaling the smoke and gases on this occasion contributed to bring on the asthmatic attack suffered by appellee, and that she was subjected to atmosphere more polluted with these foreign and irritating elements because the door was not closed before the train entered the tunnel, we must yet indulge in mere speculation to conclude that she would not have been stricken with asthma on this occasion by breathing such smoke and gases as would have entered the coach if the door had been closed.

Michie on Carriers, vol. 3, section 2529, page 1982, reads:

"In passing through tunnels of any considerable length a train should ordinarily be lighted, and the windows, doors, and even the ventilators should be closed to prevent the otherwise inevitable discomfort from smoke, cinders, and gas. In a case in which it appeared that when defendant's train, upon which plaintiff was a passenger, passed through a long tunnel, the coaches were rendered very uncomfortable in consequence of the doors being left open, and plaintiff, who was sitting near the front door of one of the coaches was injured while attempting to close the door, it was held that defendant was liable."

In its treatise on Carriers, Corpus Juris, vol. 10, section 1381, page 966, carries this text:

"It is the duty of the carrier to have the windows, doors, and ventilators of a passenger car closed while passing through a long tunnel to prevent the otherwise inevitable discomfort from smoke, cinders and gas; but it does not follow that an officer should be provided for every car, or that the omission to shut out the gas and smoke would of itself give a passenger a right to sue for the discomfort and annoyance."

The texts quoted from the two authorities on carriers appear to be based upon the case of Western Maryland Railroad Company v. Stanley, 61 Md. 266, 48 Am. R. 96. The appellee there appears to have been a passenger of appellant railroad company. He was seated in the front seat of a coach next to and within three or four feet of

the door. The train entered a long tunnel while the door of the coach was open. The coach was unlighted and became utterly dark when it entered the tunnel. Smoke and cinders entered the coach in great quantities, to the annoyance and discomfort of all the passengers, a number of whom shouted "shut the door." Appellee in that case, to save himself and his fellow travelers from the annoyance and discomfort of the smoke and cinders, arose and undertook to shut the door. While groping for it in the darkness the door was caused to swing on its hinges from a lurch of the train and one of appellant's arms ran through the glass, cutting him severely. He instituted an action to recover for the injuries received by being cut with the glass, and the railroad company defended upon the theory that he was guilty of contributory negligence in leaving his seat and attempting to close the door. It does not seem to have occurred to him or his attorneys that he could recover under the circumstances for breathing smoke and coal gas which entered through the open door, and that fact played no part in the case further than it was held that, in view of all the circumstances, appellee could not be said to have been guilty of contributory negligence as a matter of law.

It was held in view of all the facts of the case to be a question for the jury whether appellee's injuries were the result of appellant's negligence in leaving the door open and unsecured, so that it would swing with the motion of the train, and leaving the coach unlighted so that a passenger could not see to close the door against the smoke, gases and cinders entering as the train proceeded through the tunnel, or were the result of his contributory negligence in attempting to close the door while the coach was in utter darkness, making his undertaking to do so hazardous. Among other things in that opinion it was said:

"Whilst we do not think or mean to say that an officer should have been provided for every car, or that the omission to shut out the gas and smoke would of itself have given a right to passengers to sue for the discomfort and annoyance, yet we think all the recited facts and circumstances taken together, if found by a jury, would warrant the finding of negligence on the part of the defendant, and justify a verdict for the plaintiff, unless the plaintiff's conduct amounted to contributory negligence. This

the court was asked by the defendant to say, as a matter of law, the plaintiff's action was, and barred recovery. We think the court below committed no error in declining to so instruct the jury.''

In M. K. & T. R. Company v. Orton, 67 Kan. 848, 73 Pac. 63, appellee, while a passenger, finding no seat available, stood in the open door of a coach as the train was proceeding and a cinder struck him in the eye. There was no evidence of negligence with reference to the appliances of the locomotive for preventing the escape of cinders or of negligent operation. Appellee's case was founded solely upon appellant's negligence in not having the door of the coach closed. The judgment was there reversed upon the holding that there was no proof of culpable negligence with respect to the open door. It was said:

> "The only other charge of negligence was in failing to keep closed the door of the coach wherein the plaintiff was riding. The rules of the company, it is true, required that the doors be kept closed; but the opening and closing of the doors and windows of cars is not fully within the control of the company or its employees. Passengers pass from one coach to another, and hence the doors are frequently opened. They are also frequently opened by passengers for purposes of ventilation. The mere fact that a cinder comes in at a door or window and strikes a passenger is not evidence of negligence. Cinders come into cars and into contact with passengers, whether they are sitting or standing. Orton might have been struck as readily if he had been occupying an end seat as when standing.''

The same rule with reference to windows of coaches has been adhered to by this court. See Chadwick v. L. & N. Railroad Company, 213 Ky. 831, 281 S. W. 1018; and York v. C. N. O. & T. P. R. Company, 216 Ky 825.

The authorities are uniform in holding that negligence predicated upon extraordinary duty owing by carriers and their servants to the sick, aged and infirm who are passengers is never established unless notice of the condition of the passenger is brought home to the carrier. Here there is no evidence that the carrier had notice that appellee suffered with asthma before the train entered the tunnel. Neither is there any complaint of its failure

to do everything possible under the circumstances after her condition was discovered.

Considering the foregoing we come to the application to be made to the particular facts of this case. Appellee had been subject to asthma. She had spent the day in activities well calculated to produce a recurrence of that disease. She was seated in one of the coaches of appellant's train in the front seat, the one nearest to and only three or four feet from the door. It was opened in order that passengers might alight and entrain at Dumont station, after which no trainman returned to close the door. Notice that she was subject to asthma had not been given to any member of the train crew. She knew that the tunnel would be entered immediately after the train left Dumont and saw that the door was open. She neither closed it nor attempted to close it, nor requested anyone else to do so, though a fellow-passenger, a man, was seated just across the aisle from her and as close to the door as she was. She was stricken with asthma while inhaling the smoke and gases as the train passed through the tunnel. That she would have been so affected if the door had been closed may reasonably be inferred, since smoke and gases enter coaches regardless of all precautions that may reasonably be taken. No other passenger, though there were many of them in the coach, was affected.

Under these facts we are constrained to hold that there is a failure of proof tending to establish that the negligence of appellant, if any, in the failure of one of its trainmen to return to the coach after the passengers entrained at Dumont to close the door, was the proximate cause of appellee's injuries. On the other hand, her own testimony establishes conclusively that, with full knowledge that the door was open and the tunnel immediately ahead, she failed to take merely a step and perform the simple act of closing a door, or even to request some one else to do so. This failure upon her part is conclusively established by her own evidence to be the proximate cause of the injury of which she complains. From the evidence reasonable men could not differ as to this.

We are constrained to hold that appellant's motion for a peremptory instruction should have prevailed.

In view of this conclusion the other questions presented will be reserved.

Reversed and remanded for a new trial consistent herewith.